**NOT FOR PUBLICATION**

```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY


                                   :
MARK KLEINMAN,                     :    HONORABLE JOSEPH E. IRENAS
                                   :
          Petitioner,              :    Civil Action No. 05-5821 (JEI)
                                   :
     v.                            :             OPINION
                                   :
FEDERAL BUREAU OF PRISONS,         :
et al.,                            :
                                   :
          Respondents.             :
                                   :
```

**APPEARANCES:**

    MARK KLEINMAN,#40801-050
    F.C.I. Fort Dix
    P.O. Box 1000
    Fort Dix, New Jersey  08640
    Petitioner Pro Se

    IRENE E. DOWDY, Assistant United States Attorney
    CHRISTOPHER J. CHRISTIE,  United States Attorney
    402 East State Street, Room 430
    Trenton, New Jersey  08608
    Attorneys for Respondents

**IRENAS,** Senior Judge

    Petitioner Mark Kleinman filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 challenging the date set by the Bureau of Prisons ("BOP") for his pre-release custody placement in a community corrections center ("CCC").  The BOP filed an Answer, accompanied by the declaration of Thomas Mulvey and exhibits.  Petitioner filed a Traverse.  For the reasons explained in this Opinion, the Court dismisses the Petition.

I.

Petitioner is incarcerated at F.C.I. Fort Dix in New Jersey, serving a federal sentence of 30 months imposed on April 19, 2004, by this Court for fraud and conspiracy to defraud the United States.  See United States v. Kleinman, Crim. 03-652 (JEI) (D.N.J. filed Sept. 16, 2003).  He asserts that prison officials determined that his statutory release date is August 24, 2006, his pre-release preparation date (10%) is June 7, 2006, and that his CCC placement date is May 30, 2006.  Petitioner asserts in the Petition that he has exhausted his administrative remedies. He seeks a CCC placement date of April 12, 2006, because he has been offered seasonal employment at Ravenco Screen Printing, Inc. in West Berlin, New Jersey, which is scheduled to begin on April 12, 2006, and his family needs his financial support.

The BOP filed an Answer, accompanied by the declaration of Thomas Mulvey, Unit Manager at F.C.I. Fort Dix, and a copy of the Institutional Referral for CCC Placement dated January 20, 2006, and a printout of the Public Information Inmate Data for Petitioner dated January 20, 2006.  Mulvey avers that on January 17, 2006, officials reconsidered Petitioner's CCC placement date in accordance with Woodall v. Fed. Bureau of Prisons, 432 F.3d 235 (3d Cir. 2005).  Mulvey states that the rationale for the CCC placement date of May 30, 2006, is set forth in the Institutional Referral:

> The Unit Team originally recommended Mr. Kleinman receive 79 days halfway house placement.  After a review of his case, the Unit Team has determined that 60 - 90 days halfway house placement was more adequate to assist him with making the transition back into the community.  He has a stable residence, strong family ties, and a solid offer of employment as a salesman with a silk screen printing company.  Mr. Kleinman is currently participating in the FRP Program making $35 monthly payments.  His balance is $794,332.46.  He will make monthly payments toward his financial obligation while on supervised release.  He will receive a 30 day supply of medication to treat his high blood pressure, cholesterol, and pain to his knees.  The Unit team's r3ecomendation is above his pre-release preparation date pursuant to a court order directing the Bureau of Prisons to immediately consider, in good faith, the appropriateness of transferring Mr. Kleinman to a CCC pursuant to the Bureau of Prisons' pre-December 2002 policies (10% limitation).

(Institutional Referral for CCC Placement, dated Jan. 20, 2006, attached to Decl. of Thomas Mulvey, dated Jan. 20, 2006.)

In the Answer, Respondents argue that the Petition should be dismissed as moot or denied on the merits because the BOP redetermined Petitioner's CCC placement date on January 20, 2006, in good faith and in accordance with the Third Circuit's ruling in Woodall.  Respondents further contend that the statutory language vests the BOP with discretion in determining Petitioner's pre-release programming and the Third Circuit made it clear "that the BOP m ay assign a prisoner to a CCC does not mean that it must."  Woodall, 432 F.3d at 251.

3

Petitioner filed a Traverse in response to the Answer. He maintains that the BOP did not reconsider his placement date in good faith because the determination did not consider the date on which Petitioner's prospective employer required him to report for work. Petitioner asserts that Ravenco Screen Printing filled the position with someone else as a result of the BOP's lack of diligence, but Petitioner arranged prospective employment with Delco Metals, Inc. However, Petitioner states that Delco Metals, Inc. requires him to report for work on or before April 5, 2006, or the position will be offered to someone else. Attached to the Traverse is a letter to Mr. Mulvey in which the President of Delco Metals, Inc., states that he intends to hire Petitioner and would like him to report for a training class scheduled for April 5, 2006, prior to the busy season. Petitioner contends that "a reasonable person would assume that the only motive for the FBOP's denial of the requested CCC Placement date is to deprive the Petitioner of employment and his family of the income and health insurance which they require." (Traverse at p. 3.)

                                II.

Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has subject matter jurisdiction under § 2241(c)(3) if two requirements are

4

satisfied:  (1) the petitioner is "in custody" and (2) the custody is "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3); Maleng v. Cook, 490 U.S. 488, 490 (1989).  The federal habeas statute requires that the petitioner be in custody "under the conviction or sentence under attack at the time his petition is filed."  Lee v. Stickman, 357 F.3d 338, 342 (3d Cir. 2004) (quoting Maleng, 490 U.S. at 490-91).  This Court has subject matter jurisdiction under § 2241 to consider the instant Petition because Petitioner challenges the execution of his sentence and he was incarcerated in New Jersey at the time he filed the Petition.  See Woodall v. Fed. Bureau of Prisons, 432 F.3d 235, 242-44 (3d Cir. 2005); Spencer v. Kemna, 523 U.S. 1 (1998).

### III.

The challenge in the Petition turns on the interpretation of two sections of title 18.  Section 3621(b) provides:

> (b) Place of imprisonment.-- The Bureau of Prisons shall designate the place of the prisoner's imprisonment.  The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability. . . ., that the Bureau determines to be appropriate and suitable, considering--
>
> (1) the resources of the facility contemplated;
>
> (2) the nature and circumstances of the offense;
>
> (3) the history and characteristics of the prisoner;
> (4) any statement by the court that imposed the sentence [that articulated the purpose behind the sentence or offered a recommendation for placement]

5

> . . .
> (5) any pertinent policy statement issued by the
> Sentencing Commission pursuant to section 994(a)(2) of
> title 28.

18 U.S.C. § 3621(b). Section 3621(b) also advised that "there shall be no favoritism given to prisoners of high social or economic status."

The second statute, § 3624(c) provides:

> (c) Pre-release custody.-- The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement. The United States Probation System shall, to the extend practicable, offer assistance to a prisoner during such pre-release custody.

18 U.S.C. § 3624(c).

Prior to December, 2002, BOP P.S. 7310.04 provided that a prisoner might receive CCC placement up to six months, regardless of the length of his term and without regard to the ten percent limitation contained in § 3624(c). Woodall, 432 F.3d at 240. Thus, placement was made based on an evaluation of § 3621(b)'s factors and without regard to § 3624(c)'s time limitations. However, on December 13, 2002, the Department of Justice Office of Legal Counsel issued a memorandum concluding that the authority to transfer a prisoner to a CCC is derived solely from § 3624, which limits CCC placement to the lesser of 10% of the

sentence or six months.  Id.  The First Circuit and the Eighth Circuit found the 2002 policy unlawful because it failed to recognize the BOP's discretion to transfer an inmate to a CCC at any time under § 3621.  Id.

In response to these and other rulings, on August 18, 2004, the BOP proposed new regulations "announcing its categorical exercise of discretion for designating inmates to community confinement when serving terms of imprisonment."  69 Fed. Reg. 51,213 (Aug. 18, 2004).  The final rules, which became effective on February 14, 2005, limit CCC placement to the lesser of 10% of a prisoner's total sentence or six months, unless special statutory circumstances apply.  See id.; 28 C.F.R. §§ 570.20, 570.21.

In Woodall, the Third Circuit held that the new regulations are not a permissible construction of § 3621(b) because they do not allow for full consideration of the factors enumerated in that statute.  Woodall, 432 F.3d at 241, 244.  Specifically, the Third Circuit reasoned:

> The regulations do not allow the BOP to consider the nature and circumstances of an inmate's offense, his or her history and pertinent characteristics, or most importantly, any statement by the sentencing court concerning a placement recommendation and the purposes for the sentence.  And yet, according to the test and history of § 3621, these factors must be taken into account.  The regulations are invalid because the BOP may not categorically remove its ability to consider the explicit factors set forth by

7

>         Congress in § 3621(b) for making placement
>         and transfer determinations.

Id. at 244.

                              IV.

   This Court's analysis of Petitioner's request that the BOP provide him with a lengthier CCC placement begins with a fundamental basic point:  the BOP's policy pre-December, 2002, did not automatically provide six months CCC placement for each inmate.  Nor does the Third Circuit's Woodall opinion require the BOP to transfer an inmate to a CCC for any specific period. Woodall, 432 F.3d at 251.[1]

   The purpose of a CCC placement is to help the inmate with the transition from prison life.  Clearly, certain prisoners need more assistance with the transition than others.  Those prisoners who are serving long sentences, who are uneducated or lack marketable job skills, who suffer from mental or physical ailments, or who lack any type of resources or support network

---

   [1] "We have held that the BOP may transfer an inmate to a CCC or like facility prior to the last six months or ten percent of his sentence.  In exercising its discretion in this matter, the BOP must consider the factors set forth in § 3621(b).  However, that the BOP may assign a prisoner to a CCC does not mean that it must.  Therefore, the appropriate remedy is an order requiring the BOP to consider - in good faith - whether or not Woodall should be transferred to a CCC.  In making this decision, the BOP should consider the sentencing judge's recommendation and the other § 3621 factors, as well as any other appropriate factors the BOP routinely considers.  This should be done without reference to the BOP's 2002 and 2005 policies."  Woodall, 432 F.3d at 251.

outside prison likely need special support to ease their re-entry into society.  In contrast, inmates like the Petitioner who are serving shorter sentences, for basically white collar offenses, who have assets, family support, education, and vocational skills are less likely to need as much assistance in their transition to from prison to society.

Petitioner's arguments as to why he needs a CCC placement of more than three months are not persuasive.[2]  Petitioner's concerns appear very real and his appeals through the administrative process and to this Court are no doubt made in good faith.  While respectful of the havoc that results following the incarceration of a loved one, the Court reminds Petitioner that the focus of CCC placement is on the prisoner and not the needs of the family.  Petitioner has not articulated any circumstance that would warrant additional time to ease his re-

---

[2] Petitioner claims that he is deserving of a longer CCC placement because his ability to obtain work depends on it.  In his papers, Petitioner states that he received a job offer from a prospective employer which requires him to start work by April 5, 2006.  The letter dated January 27, 2006, states:  "I am writing this letter to confirm my intentions [of] hiring Mark Kleinman (40801-050).  We would like Mark to begin his training on April 5, 2006.  Our office is in close proximity to the halfway house in which Mark will be residing.  This makes it an ideal situation for both him and my company.  We have a training class scheduled for April 5, 2006 in which the new employees will learn how to enter data before our busy season begins."  (Letter dated Jan. 27, 2006, attached to Traverse.)  It appears that Petitioner has misunderstood the purpose behind CCC placement.  The point of CCC placement is not to assist family members, but rather to allow the prisoner to re-integrate into society.

entry into society, compared to the many federal prisoners who are poor, uneducated and untrained, and who are serving long sentences.[3]  Prisoners would certainly like the less rigorous confinement of a CCC and might even get a head start on tasks like finding a job or a home.  However, the notion that this type of easier confinement is necessary to aid re-entry is counter-intuitive.  Furthermore, after reviewing many petitions like the instant one, the Court is left with the conclusion that in many cases the issue is not one of helping re-entry into society, but simply providing the inmate with a more favorable form of incarceration.  See Sandin v. Conner, 515 U.S. 472 (1995).

V.

The Court concludes that an eighty-six day placement in a CCC facility is appropriate for Petitioner, as he is not the type of prisoner for whom assistance in re-integration is crucial.  The Court will dismiss the Petition.

DATE:    3/29/06

s/ Joseph E. Irenas
JOSEPH E. IRENAS
Senior United States District Judge

---

[3] The ease with which Petitioner was able to obtain two job offers, while incarcerated, is further evidence that he is not the type of prisoner in need of a lengthy CCC placement for re-integration into society.